MIDDLESEX, SS.    # Commonwealth of Massachusetts    SUPERIOR COURT

I, Dan Clinton, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings in case NO. 04-1073 entered in the Superior Court on the 19th day of March in the year of our Lord 2004



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 15th day of April in the year of our Lord 2004

Deputy Assistant Clerk of Courts

# COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

Superior Court Department
of the Trial Court
Civil Action No. 04-1073

SPECTRA MEDICAL DEVICES, INC. )
A Massachusetts corporation, )
)
        Plaintiff )
)
        v. )
)
MID STATES MEDICAL INSTRUMENTS, )
An Illinois corporation, and KK METALLIC )
INDUSTRIES, INC., a Pakistani corporation, )
)
        Defendants )

NOTICE OF FILING OF
NOTICE OF REMOVAL

Please take notice that Defendants Mid States Medical Instruments, Inc. and KK

Metallic Industries, Inc. have, pursuant to 28 U.S.C. § 1441(a) removed this state court

action to the United States District Court for the District of Massachusetts, Eastern

Section. An attested copy of the Notice of Removal is attached hereto as Exhibit A.

Kindly effect the removal of this action and proceed no further unless and until such

action is remanded to you by the United States District Court.

The Defendant
MID STATES MEDICAL INSTRUMENTS
and KK METALLIC INDUSTRIES, INC.
By Their Attorneys

Certificate of Service

    I, Jeffrey E. Poindexter, attorney
for defendants, Mid States Medical
Instruments and KK Metallic
Industries, Inc., in this above matter,
hereby certify that a true copy of the
above document was served upon the
attorney of record for each party by
mail on April 14, 2004.

_____
Jeffrey E. Poindexter

_____
Jeffrey E. Poindexter, BBO #631922
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Tel. 413-781-2820; Fax. 413-785-5060

Of Counsel:
Thomas Patterson (ARDC # 3128587)
Scott Berends (ARDC # 6281019)
The Patterson Law Firm
33 North LaSalle Street, Suite 3350
Chicago, Illinois 60602
Tel. 312-223-1699; Fax. 312-223-8549

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN SECTION**

SPECTRA MEDICAL DEVICES, INC.     )       Civil Action No.
A Massachusetts corporation,                )

        Plaintiff                                       )

    v.                                                    )       NOTICE OF REMOVAL

MID STATES MEDICAL INSTRUMENTS,   )
An Illinois corporation, and KK METALLIC   )
INDUSTRIES, INC., a Pakistani corporation,  )

        Defendants                                   )

**04  1 0 7 4 5 GAO**

I HEREBY ATTEST AND CERTIFY ON
THAT THE FOREGOING DOCUMENT IS A FULL, TRUE
AND CORRECT COPY OF THE ORIGINAL ON FILE
IN MY OFFICE AND IN MY LEGAL CUSTODY.

CLERK, U.S DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BY:

Please take notice that Defendants Mid States Medical Instruments, Inc. and KK

Metallic Industries, Inc. hereby remove to this Court the state court action described

below.

    1.    On or about March 19, 2004 the Plaintiff commenced, in the

Commonwealth of Massachusetts Superior Court for Middlesex County an action entitled

Spectra Medical Devices, Inc.vs. Mid States Medical Instruments, Inc., and KK Metallic

Industries, Inc., Civil Action No. 04-1073.  A copy of the Complaint and summons are

attached as Exhibit A.

    2.    Plaintiff served a copy of the summons and Complaint on Defendants on

March 19, 2004 by registered mail.  Defendants received the Complaint several days later

and immediately transmitted it to their attorneys.

    3.    This action is a civil action of which this Court has original jurisdiction

pursuant to 28 U.S.C. § 1332(a)(1) and is one which may be removed to this Court by

Defendants pursuant to 28 U.S.C. § 1441(a) as it is a civil action between citizens of

different states and the matter in controversy exceeds $75,000 exclusive of interest and

costs. Plaintiff is requesting, among its damages, treble damages pursuant to

Massachusetts state law and punitive damages for breach of a contract. Defendants have

previously filed an action in the United States District Court for the Northern District of

Illinois on the same contract that forms the basis of Plaintiff's Complaint and Defendants

estimate that their damages will approach $1,000,000 exclusive of costs. As the

underlying contract that forms the basis of both complaints is a ten year contract with

exclusive dealing provisions and, based on performance of the contract prior to breach,

the contract was worth approximately $450,000 a year.

4.    Defendants are informed and believe that Plaintiff is a Massachusetts

corporation with its principal place of business in Massachusetts. Defendants are,

respectively, an Illinois corporation and a Pakistani corporation.

The Defendants
MID STATES MEDICAL INSTRUMENTS
and KK METALLIC INDUSTRIES, INC.
By Their Attorneys

Dated: April 09, 2004

Jeffrey E. Poindexter, BBO #631922
Bulkley Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Tel. 413-781-2820; Fax. 413-785-5060

**Certificate of Service**

I, Jeffrey E. Poindexter, attorney for
defendants, Mid States Medical Instruments
and KK Metallic Industries, Inc., in this
above matter, hereby certify that a true copy
of the above document was served upon the
attorney of record for each party by mail on
April 09, 2004

Of Counsel:
Thomas Patterson (ARDC # 3128587)
Scott Berends (ARDC # 6281019)
The Patterson Law Firm
33 North LaSalle Street, Suite 3350
Chicago, Illinois 60602
Tel. 312-223-1699; Fax. 312-223-8549

Jeffrey E. Poindexter

2



**BULKLEY, RICHARDSON AND GELINAS, LLP**

LAW OFFICES
1500 MAIN STREET, SUITE 2700
POST OFFICE BOX 15507
SPRINGFIELD, MA 01115-5507

TEL:  (413) 781-2820
FAX:  (413) 272-6803
E-MAIL: INFO@BULKLEY.COM

ROBERT B. ATKINSON
ROBERT A. GELINAS
STEPHEN W. SCHUPACK
PETER ROTH
RONALD P. WEISS
FRANCIS D. DIBBLE, JR.
HAMILTON DOHERTY, JR.
MICHAEL H. BURKE
PETER H. BARRY
DAVID A. PARKE
FELICITY HARDEE
CHRISTOPHER B. MYHRUM
GEORGE W. MARION
ELLEN M. RANDLE
KEVIN C. MAYNARD
MARK D. CRESS

MARY J. KENNEDY
J. MICHAEL SCULLY
JAMES C. DUDA
KELLY A. McCARTHY
DANIEL J. FINNEGAN
MELINDA M. PHELPS
DEBORAH D. FERRITER
JEFFREY E. POINDEXTER
KATHERINE A. ROBERTSON
SANDRA J. STAUB
KATHLEEN LEITAO BERNARDO
DONN A. RANDALL*
SCOTT W. FOSTER
ELIZABETH H. SILLIN
VANESSA L. SMITH
DEBRA A. QUINN

JOSHUA P. GREY
JENELLE C. DODDS
CHRISTINE Y. LE BEL
ANDREW J. DRAYER*
CHRISTOPHER J. SCOTT
MARY ELLEN MANGANELLI*

COUNSEL

CAROL E. KAMM*
J. PATRICK KENNEDY*
PHILIP J. TARPEY, JR.
MARTIN D. TURPIE

*RESIDENT IN BOSTON OFFICE

April 14, 2004

**VIA FEDERAL EXPRESS**
Clerk
Superior Court Department
Superior Courthouse
40 Thorndike Street
Cambridge, MA  02141

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

APR 15 2004

*Edward J. Sullivan*
CLERK

Re:    Spectra Medical Devices, Inc.
       v. Mid States Medical Instruments, and
       KK Metallic Industries, Inc.
       Superior Court Civil Action No. 04-1073

Dear Sir/Madam:

I am enclosing for filing a Notice of Filing of Notice of Removal of the referenced action, along with an attested copy of defendants' Notice of Removal filed with the Federal Court in Civil Action No. 04-10745-GAO

Very truly yours,

Jeffrey E. Poindexter

JEP:rfs

cc: Scott Berends (Via Facsimile)

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
C.A. NO.

**04-1073**

SPECTRA MEDICAL DEVICES, INC.          )

      Plaintiff                              )

                              )

vs.                                     )

MID STATES MEDICAL INSTRUMENTS,         )          **COMPLAINT**
INC. an Illinois Corporation, AND KK    )
METALLIC INDUSTRIES, INC., a Pakistani  )
Corporation                             )
      Defendants                             )

*FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR ... MAR 19 2004 ... CLERK*

---

## PARTIES, JURISDICTION AND VENUE

1.    Spectra Medical Devices, Inc. ("Spectra") is a Massachusetts corporation with an usual place of business at 4C Henshaw Street, Woburn, MA 01801.

2.    Defendant Mid-States Medical Instruments, Inc. ("Mid States") is an Illinois Corporaiton having an usual place of business in Illinois, doing business in Massachusetts.

3.    Defendant KK Mettalic Industries, Inc. ("KK") is a Pakistani corporation with its principal place of business in Pakistan, doing business in Massachusetts.

## COUNT I

1.    On or about February, 1997, Plaintiff established a regular course of business dealings with Defendant KK based upon KK's representations that it was the total and complete manufacturer of the medical instruments being sold by it to Spectra.

2.    On or about February, 1998, Spectra discovered that KK was also represented by Defendant Mid-States, f/k/a Aza, Inc. as KK's manufacturer's representative in the United States.

3.    Spectra did not want Mid-States to compete with Spectra for Spectra's then established customer(s), and in an attempt to protect its established regular business dealings from circumvention, Spectra proposed the Agreement attached hereto as Exhibit "A" so that Spectra's customers would not be wooed away by Mid-States and/or KK.

03/19/04  10:34#0000 4677 CLERK E
   CIVIL          240.00
SURCHARGE        15.00
SUMMONS          10.00
SECC             20.00
041073 #
SUBTTL          285.00
TOTAL           285.00
CHECK           285.00

4.    Although Spectra's proposed Agreement was never signed, on or about November 1, 1998 the parties entered the Agreement attached hereto as Exhibit "B", which amongst other things indicates at the end of paragraph 6 that upon termination, all parties including Mid-States a/k/a Aza could immediately negotiate and compete directly with Spectra for Spectra's established customer(s).

5.    At all times relevant hereto up to and including the time that Exhibit "A" was proposed and Exhibit "B" was entered, KK had been providing Spectra with medical instruments at a cost which allowed Spectra to meet and/or beat the price at which its competitors would sell similar medical instruments.

6.    At no time prior or subsequent to the November, 1998 Agreement between the parties did Spectra meet what were otherwise promised and represented to be only "sales goals" despite being referred to in the Agreement as minimum requirements.

7.    Despite not meeting any of the purported "sales goals" on or about October 1, 1999 the parties signed the Agreement attached hereto as Exhibit "C".

8.    Spectra was induced to sign subject Agreement (Exhibit "C") herein by false, material, misleading representations by and on behalf of Mid-States and KK including but not limited to the following:

a.    that KK was and would continue to be the actual total and complete manufacturer of all products distributed pursuant to the written Agreement;

b.    that despite the new Agreement dated October 1, 1999 the established conduct of the parties would not change and the sole effect of the October 1, 1999 Agreement was to extend the potential term thereof without changing the actual course of business conduct established prior thereto;

c.    that KK Metallic, Inc. had complete hands on control of all daily manufacturing operations in their own plant located in Pakistan, including but not limited to the purchase of raw materials and all steps to cutting, forging and fabricating the product(s) as well as complete control over all cost(s) and quality;

d.    that at all times during the working relationship prior to the October 1, 1999 Agreement, the Butts and their respective Companies KK and Mid-States had prided themselves as manufacturing the highest quality medical instruments for the lowest price;

e. that KK would always continue to provide very sharp, competitive pricing with respect to the product they manufactured and would always

2

remain the lowest cost, most competitively priced manufacturer;

f.      that Spectra could always and should, in the event pricing and/or quality was questioned, purchase product from other manufacturers, insisting a comparison would only result in the conclusion that a lower price meant lesser quality when in fact the opposite was found to be true;

g.      that Spectra's price would not be undercut by Mid-States and/or KK;

h.      that KK would put Spectra's name on its catalog of all the medical instruments it manufactured;

i.      that despite the inclusion of Mid States as KK's distributor, Spectra could hold itself out as having a direct relationship with the manufacturer, KK;

j.      that despite any other term of the written agreement, Spectra would only pay for items ordered;

k.      that KK would not manufacture any instruments pursuant to the Agreement not ordered by Spectra;

l.      that KK's and Mid-States' only recourse in the event of termination would be to allow Mid-States and/or KK to directly solicit Spectra's customers as reflected in paragraph 6 of the November, 1998 Agreement attached hereto as Exhibit "B";

m.      that KK owned its own forging plant;

n.      that KK performed its cutting and filing operations;

o.      that KK performed total and complete fabricating operations.

p.      that KK would produce total production process flow charts from its forging, cutting and filing operations and provide lot traceability.

9.      Suddenly during May, 2003 Spectra's largest instrument customer threatened to stop ordering and informed Spectra that its competitors' prices were far below that which Spectra was charging.

10.      Spectra found itself unable to come close to the lower pricing available to its customers from competitors due to the very high price Spectra was being charged by KK and Mid-States.

3

11.    Shortly after losing the first of three major accounts, Spectra and Spectra's President were accused of being "frauds" and "liars" because Spectra did not have competitive pricing or a direct relationship with a true manufacturer operating its own forging plant, or performing its own cutting, filing and/or fabricating operations.

12.    As a result of Defendants' conduct as aforesaid Spectra lost the opportunity to sell its other products as well as Defendants to the customer(s) it was losing as a result of lost trust.

13.    When Spectra realized that it was quickly losing its customer(s) because its prices were far above market Spectra made an exerted effort to obtain competitive pricing from KK and Mid-States; however, KK and Mid-States refused, making every excuse that a true "manufacturer" would have for not being able to price competitively in the US market.

14.    The excuses used by KK and Mid-States for not being able to price competitively were fictitious, fabricated and untrue in every respect.

15.    KK was not and is not a total and complete "manufacturer" in that it lacks any manufacturing equipment and does not own its own forging plant.

16.    KK and Mid-States failed and refused to provide manufacturer's pricing to Spectra in accordance with its promises, representations and agreement to treat Spectra as its "manufacturer's representative/direct distributor".

17.    KK and Mid-States failed and refuse to produce its own catalog of items manufactured by them, but put Spectra's name on a general manufacturer's catalog laying out full lines of medical instruments Defendants do not manufacture, without appropriate permission and/or authorization.

18.    Defendants failed and refused to mitigate damages as promised, represented and agreed by attempting to sell the product they manufactured directly to Spectra's customers.

19.    On numerous occasions Defendants encouraged Plaintiff to buy from Defendants' competition as set forth in the May 9, 2003 correspondence, attached hereto as Exhibit "D".

20.    When Plaintiff acted on Defendants' suggestion to compare, they found and obtained superior quality product at approximately one half the price, and Defendants failed and refused to lower their prices or otherwise compete.

21.    All of the above conduct of the Defendants, their agent(s) and employee(s) constitute their deliberate, deceitful and fraudulent misrepresentations upon which they induced Plaintiff to rely, all to the Plaintiff's detriment and damage.

4

## COUNT II

22.     Plaintiff repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23.     All the conduct of the Defendants, their agent(s) and employee(s) constitute their breach of their contractual obligations to Plaintiff.

## COUNT III

24.     Plaintiff repeats and realleges paragraphs 1 through 23 as though fully set forth herein.

25.     All the conduct of the Defendants, their agent(s), and employee(s) constitutes their lack of good faith and fair dealing in their contractual obligations to Plaintiff.

## COUNT IV

26.     Plaintiff repeats and realleges paragraphs 1 through 25 as though fully set forth herein.

27.     By their actions, Defendants, their agents and employees have willfully and intentionally defrauded and deceived the Plaintiff.

## COUNT V

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as though fully set forth herein.

29.     By their actions, Defendants, their agents and employees as aforesaid have willfully and intentionally defamed Plaintiff.

## COUNT VI

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

31.     All parties hereto are engaged in a trade or business within the meaning of M.G.L. Ch. 93A, sections 2 and 11.

32.     All the conduct of the Defendants, their agents and employees as aforesaid was committed willfully and intentionally, constituting unfair and deceptive practices against the Plaintiff.

WHEREFORE, Plaintiff demands the following relief:

      a.      upon request and when appropriate, issuance of a Temporary Restraining Order prohibiting Defendants from acting pursuant to the Agreement which it obtained fraudulently from Plaintiff;

      b.      upon request and when appropriate, Permanent Injunction further declaring that the Agreement is null and void;

      c.      upon request and when appropriate, a Short Order of Notice allowing a timely hearing upon Plaintiff's requests per paragraphs "a" and "b" above;

      d.      on Plaintiff's claim for fraud, actual and punitive damages as provided by law together with attorney fees, interest and costs;

      e.      on Plaintiff's claim pursuant to M.G.L. Ch. 93A, actual damages trebled as provided by law together with attorney fees, costs and interest;

      f.      on Plaintiff's claim for breach of contract, actual and punitive damages as provided by law together with attorney fees, costs and interest;

      g.      on Plaintiff's claim for defamation, actual and punitive damages as provided by law together with attorney fees, costs and interest; and,

      h.      whatever additional relief this Honorable Court deems appropriate.

Respectfully submitted,
Spectra Medical Devices, Inc.
By its Attorneys,

Daniel Solomon, BBO#472580
Garry N. Blank, BBO#045330
Blank and Solomon
11 Beacon Street, Suite 315
Boston, MA  02108
(617) 367-5800

Dated: March 19 , 2004

6

## AGREEMENT

1.    Agreement made this    day of February, 1998, by and between the following Parties. Spectra Medical Devices, Inc. 4F Henshaw Street, Woburn, Massachusetts, ("Spectra"), Ayza, Inc., 2233 Glenview Court, Schaumburg, Illinois, 60194, ("Ayza"), and K K Metallic Industries, P O. Box 2033, Sialkot, Pakistan, ("KK").

2.    The Parties are engaged in a business relationship whereby Spectra purchases hand held steel instruments manufactured by KK and distributed by Ayza. Spectra sells said instruments directly to C.R Bard ("Bard").

3.    For valuable consideration had and received, the value of which is hereby acknowledged, the Parties agree as follows:

a.    With reference to instruments manufactured by KK and distributed by Ayza to Spectra, Spectra agrees to engage and bear the cost of all appropriate promotional activities, customer service, satisfaction and coordination, in-house U.S. quality inspection, and quality monitoring.

b.    KK and Ayza agree to refrain from directly or indirectly soliciting, contacting, doing business with, or engaging in any other form of commercial or business activity, distribution, marketing, purchase, sale, negotiation, or discussion with Bard, any affiliate or customer of Bard, or any customer, business or commercial contact made with Bard, its affiliates, associates, or customers, as a result of its business with Spectra described hereto. This Agreement to refrain from any such contact or commercial dealings as set forth in this paragraph includes KK, Ayza, its employees, representatives, agents, affiliates, independent contractors, sales staff and/or any other individual and/or corporate or business entity of KK or Ayza.

4    The Parties agree that any violation of the terms of the above-paragraph by KK or Ayza will constitute immediate and irreparable harm to Spectra, and as a result thereof Spectra will be entitled to apply for and receive immediate injunctive relief; and,

EXHIBIT A

further, that KK and Ayza shall be fully liable for Spectra's actual damages together with punitive damages as appropriate, legal fees and costs.

5.   In the event that any legal action is commenced hereto, the Parties agree to subject themselves to the jurisdiction of the Commonwealth of Massachusetts, and agree further that the laws of said Commonwealth shall control in any litigation hereunder. For purposes of service, certified mail, return receipt requested, sent to the addresses of the Parties set forth herein shall suffice as completed legal service of all documents to be served thereto.

6.   Should any portion of this Agreement be deemed invalid, same shall not effect the validity of the remainder hereof.

Executed as a sealed instrument this ___ day of February, 1998.


_____ Authorized Agent
Ayza, Inc.

_____
Anthony C. Arrigo, Jr., President
Spectra Medical Devices, Inc.


_____ Authorized Agent
K.K. Metallic Industries, Inc.

specagr

2

# AGREEMENT

This agreement is hereby made this ~~24th~~ 1ST [handwritten] day of ~~August,~~ Nov. [handwritten] 1998, by and between the following parties: **Spectra Medical Devices, Inc.,** a **Massachusetts Corporation,** located at 4 F Henshaw Street, Woburn, **Massachusetts 01801** (hereinafter referred to as " **Spectra**" ). **Ayza, Inc.,** an Illinois Corporation, located at 2233 Glenview Ct., Schaumburg, Illinois 60194 (hereinafter referred to as "**Ayza**" ) and **K.K. Metallic Industries,** located at P.O.Box 2033, Sialkot, Pakistan (hereinafter referred to as "**KK**" ); and

WHEREAS, the parties are engaged in a business relationship where Spectra purchases hand held steel instruments manufactured by KK and distributed in the United States by Ayza; and

WHEREAS, **Spectra** sells these instruments directly to **C.R. Bard** (hereinafter referred to as "**Bard**" ); and *and other NORTH AMERICAN COMPANIES* [handwritten] *Medical* [handwritten]

WHEREAS, the parties believe it is in each of their own best interests to work together in this business relationship to provide product from KK through Ayza and Spectra to Bard in a business like manner *medical* [handwritten] *AND OTHER NORTH AMERICAN Companies* [handwritten]

THEREFORE, for valuable consideration had and received, the value of which is hereby acknowledged by all parties, said parties agree as follows

1) With reference to instruments manufactured by **KK** and distributed by **Ayza** to **Spectra**, Spectra agrees to engage and bear the cost of all appropriate promotional activities with reference to said product, customer service, satisfaction and coordination, in-house U.S. quality inspections as may become necessary, and quality monitoring.

2) **KK** and **Ayza** agree to refrain from directly or indirectly soliciting, contacting, doing business with, or engaging in any other form of commercial or business activity, distributing, marketing, purchasing or selling, negotiating or discussing with **Bard** or any affiliate or customer of **Bard** known to Ayza and KK, during the pendency of this agreement. This agreement to refrain from any such contact or commercial dealing as set forth herein includes KK, Ayza, its employees, representatives or agents, or any affiliate staff or business entity. The parties agree to the following terms for carrying out their responsibilities: *and other North American Companies* [handwritten] *Medical* [handwritten]

   A) In placing orders to be filled and disbursed to Bard, six months in advance purchase order, shipment schedule commitment is required to insure appropriate delivery.

   B) **Spectra** agrees to refrain from directly or indirectly purchasing IRIS SCISSORS, 4 ½ STRAIGHT, IRIS FORCEPS, 4", CURVED or HEMOSTAT MOSQUITO FORCEPS, 5", CURVED, from any other vendors including KK except **AYZA**. This agreement to refain from any such contact or commerical dealing as set forth herein includes **SPECTRA**, its employees, representatives or agents, or any affiliate staff or business entity.

   C) Spectra agrees to purchase and order a minimum of 80,000 instruments per month from **AYZA**, but an average of 100,000 per month over a five year period beginning from August 1998 upto August 2003.

Exhibit B [handwritten]

D) On any items delivered to Spectra but rejected because of quality concerns, said items must be returned to Ayza for replacement. No credit shall be allowed but replacement will be allowed upon the return of the defective oor rejected items, unless mutually agreed to otherwise ( i.e. quick re-cleaning by Spectra for goods rejects for uncleanness or not clean or burs and or finit.

E) All items ordered from KK as distributed through Ayza and delivered to Spectra must be purchased by Spectra. In other words, all items ordered must be paid for unless rejected pursuant to the previous paragraph. Any item rejected must be defective in either its material or in its construction.

3) The parties agree that any violation of paragraphs 2, 2A, 2B, 2C and E by any of the parties will result in and constitute immediate and irreparable harm to the other parties and as a result, each party will be entitled to apply for and receive immediate injunctive relief as they deem appropriate. Further, any party who has been wrongfully harmed by the actions of the other in violating the provisions of this agreement shall be fully liable for appropriate, legal fees and cost.

4) The parties further agree to subject themselves to the jurisdiction of the commonwealth of Massachusetts and agree further that the laws of said commonwealth shall control any litigation hereunder. For purpose of service, certified mail, retrun receipt requested, sent to the address of the parties at the address below indicated shall constitute and suffice as complete legal service of all documents to be served thereto.

5) Should any protion of this agreement be deemed invalid. That shall not affect the validity of the remaining provisions of this agreement.

6) This agreement shall last for 5 Years from the date above written but may be extended by written agreement of the parties from time to time thereafter. At any time within these 5 years, the parties but mutual consent can agree to rescind or terminate the agreement as they deem appropriate such early termination would have to be by agreement of all parties. Upon termination, all parties including for Spectra other suppliers of the merchandise above indicated, and for Ayza to negotiate directly with Bard and any other NORTH American Medical Compensi

7) Time is of the essence in carrying out the responsiblities of this agreement.

Executed as sealed instruments this ~~MAY~~ 1ST day of November 1998.

_____
ANJUM BUTT, Authorized for
AYZA, INC.
2233 Glenview Court,
Schaumburg, Illinois 60194

_____
Phyllis Dias
WITNESS
Phyllis DIAS
SPECTRA MEDICAL DEVICES, INC

_____
M. MUSHTAQ BUTT, Authorized for
K.K. METALLIC INDUSTRIES,
P.O. Box 2033,
Sialkot, Pakistan.

_____
ANTHONY ARRIGO, M.D.
SPECTRA MEDICAL DEVICE INC
4F HENSHAW STREET
WOBURN, MA 01801

# AGREEMENT

This agreement is hereby made this 1st day of October 1999, by and between the following parties: *Spectra Medical Devices, Inc.* a Massachusetts Corporation, located at 4F Henshaw street, Woburn, Massachusetts 01801 (hereinafter referred to as " Spectra "), *Mid States Medical Instruments, Inc.,* previously known as , *Ayza, Inc.,* an Illinois Corporation, located at 5050 Newport Drive, Unit 8, Rolling Meadows, Illinois 60008 ( hereinafter referred to as "Mid States ") and *K.K. Metallic Industries,* located at P.O.Box 2033, Sialkot, Pakistan ( hereinafter referred to as " KK " ); and

WHEREAS, the parties are engaged in a business relationship where Spectra purchases hand held steel Instruments manufactured by KK and distributed in the United States by Mid States; and

WHEREAS, Spectra sells these Instruments directly to *C.R. Bard* ( hereinafter referred to as Bard " )and other North American Medical Companies; and

WHEREAS, the parties believe it is in each of their own best interests to work together in this business relationship to provide product from KK through Mid States and Spectra to Bard and other North American Medical Companies in a business like manner.

THEREFORE, for valuable consideration had and received, the value of which is hereby acknowledge by all parties, said parties agree as follows.

1) With reference to Instruments manufactured by KK and distributed by Mid States to Spectra, Spectra agrees to engage and bear the cost of all appropriate promotional activities with reference to said product, customer service, satisfaction, and coordination, in- house U.S. quality inspections as may become necessary, and quality monitoring.

2) KK and Mid States agree to refrain from directly or indirectly soliciting, contacting, doing business with, or engaging in any other form of commercial or business activity, distributing, marketing, purchasing or selling, negotiating or discussing with Bard and other North American Companies (Known to Spectra) or any affiliate or customer of Bard and other North American Medical Companies Known to Spectra, during the pendency of this agreement. This agreement to refrain from any such contact or commercial dealing as set forth herein includes K.K., Mid States, its employees, representatives or agents, or any affiliate staff or business entity. The parties agree to the following terms for carrying out their responsibilities.

Contd......P/2....

*ANJUM BUTT*

*MUSHTAQ BUTT*

*TONY ARRIGO*

Exhibit C

A) In placing orders to be filled and disbursed to Bard and other North American Medical Companies, known to spectra six months in advance purchase order, shipment schedule commitment is required to insure appropriate delivery.

B) Spectra agrees to refrain from directly or indirectly purchasing IRIS SCISSORS, 4-1/2 STR/CVD, IRIS FORCEPS, 4", STR/CVD/ HALF CVD, HEMOSTATS MOSQUITO FORCEPS, 5", STR/CVD, BAUMGARTNER NEEDLE HOLDER,5", and JACOBSON MOSQUITO FORCEPS, DELICATE, 5", STR/CVD/SERRATED/ PLAIN,MAYO HEGAR NEEDLE HOLDERS from any other vendors including K.K. except Mid States.
This agreement to refrain from any such contact or commercial dealing as set forth herein includes SPECTRA, its employees, representatives or agents, or any affiliate staff or business entity.

C) Spectra agrees to purchase and order a minimum of 80,000 Instruments per month from Mid States, but an average of 100,000 per month over a 10 years period beginning from October, 1999 upto August 2008.

D) On any items delivered to Spectra but rejected because of quality concerns, said items must be returned to Mid States for replace- ment. No credit shall be allowed but replacement will be allowed upon the return of the defective or rejected items, unless mutually agreed to otherwise ( i.e. quick re-cleaning by Spectra for goods rejects for uncleanness or not clean or burs and or lint.

2)    All items ordered from KK as distributed through Mid States and delivered to Spectra must be purchased by Spectra. In other words, all items ordered must be paid for unless rejected pursuant to the previous paragraph. Any items rejected must be defective in either its material or in its construction.

3) The parties agree that any violation of paragraphs 2,2A,2B,2C and E by any of the parties will result in and constitute immediate and irreparable harm to the other parties and as a result, each party will be entitled to apply for and receive immediate injunctive relief as they deem appropriate. Further, any party who has been wrongfully harmed by the actions of the other in violating the provisions of this agreement shall be fully liable for appropriate, legal fees and cost.

4  The parties further agree to subject themselves to the jurisdiction of the commonwealth of Massachusetts and agree further that the laws of said commonwealth shall control any litigation hereunder. For purpose of, service, certified mail, return receipt requested, sent to the address of the parties at the address below indicated shall constitute and suffice as complete legal service of all documents to be served thereto.

5) Should any portion of this agreement be deemed invalid. That shall no affect the validity of the remaining provisions of this agreement.

ANJUM BUTT          MUSHTAQ BUTT          TONY ARRIG

6) This agreement shall last for Ten years from the date above written but may be extended by written agreement of the parties from time to time thereafter. At any time within these Ten years, the parties but mutual consent can agree to rescind or terminate the agreement as they deem appropriate such early termination would have to be by agreement of all parties. Upon termination, all parties including for Spectra other suppliers of the merchandise above indicated, and for Mid States, to negotiate directly with Bard and any other North American Medical Companies known to Spectra.

7) Time is one of the essence in carrying out the responsibilities of this agreement.

    Executed as sealed Instruments this __1st__ day of __October 1999.__

WITNESS:-

**ANJUM BUTT, Authorized for**
**MID STATES MEDICAL INSTRUMENTS, INC.**
**5050 NEWPORT DRIVE , UNIT 8**
**ROLLING MEADOWS, IL 60008**

**M.MUSHTAQ BUTT, Authorized for**
**K.K. METALLIC INDUSTRIES**
**P.O.BOX 2033**
**SIALKOT- PAKISTAN.**

    ANTHONY ARRIGO, Jr.
    SPECTRA MEDICAL DEVICES,INC.
    4F HENSHAW STREET
    WOBURN, MA 01801

**Case Summary**
**Civil Docket**

## MICV2004-01073
## Spectra Medical Devices, Inc. v Mid States Medical Instruments, Inc. et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 03/19/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 04/15/2004 | **Session** | F - Cv F (10A Cambridge) | | |
| **Origin** | 1 | **Case Type** | A99 - Misc contract | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 06/17/2004 | **Answer** | 08/16/2004 | **Rule12/19/20** | 08/16/2004 |
| **Rule 15** | 08/16/2004 | **Discovery** | 01/13/2005 | **Rule 56** | 02/12/2005 |
| **Final PTC** | 03/14/2005 | **Disposition** | 05/13/2005 | **Jury Trial** | No |

### PARTIES

**Plaintiff**
Spectra Medical Devices, Inc.
4C Henshaw Street
Woburn, MA 01801
Active 03/19/2004

**Private Counsel 472580**
Daniel Solomon
Blank & Solomon
11 Beacon Street
Suite 315
Boston, MA 02108
Phone: 617-367-5800
Fax: 617-367-5820
Active 03/22/2004 Notify

**Defendant**
Mid States Medical Instruments, Inc.
Service pending 03/19/2004

**Private Counsel 631922**
Jeffrey E Poindexter
Bulkley Richardson & Gelinas
1500 Main Street, Suite 2700
PO Box 15507
Springfield, MA 01115
Phone: 413-781-2820
Fax: 413-272-6803
Active 04/15/2004 Notify

**Defendant**
KK Metallic Industries, Inc.
Service pending 03/19/2004

*** See Attorney Information Above ***

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 03/19/2004 | 1.0 | Complaint & civil action cover sheet filed |
| 03/19/2004 | | Origin 1, Type A99, Track F. |
| 04/15/2004 | 2.0 | Case REMOVED this date to US District Court of Massachusetts  by |
| | | defts Mid States Medical Instruments and KK Metallic  Industries, Inc |
| 04/15/2004 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET# **MICV2004-01073-F**

RE:   **Spectra Medical Devices, Inc. v Mid States Medical Instruments, Inc. et al**

TO:Daniel Solomon, Esquire
Blank & Solomon
11 Beacon Street
Suite 315
Boston, MA 02108

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 06/17/2004 |
| Response to the complaint filed (also see MRCP 12) | 08/16/2004 |
| All motions under MRCP 12, 19, and 20 filed | 08/16/2004 |
| All motions under MRCP 15 filed | 08/16/2004 |
| All discovery requests and depositions completed | 01/13/2005 |
| All motions under MRCP 56 served and heard | 02/12/2005 |
| Final pre-trial conference held and firm trial date set | 03/14/2005 |
| Case disposed | 05/13/2005 |

The final pre-trial deadline is **not the scheduled date of the conference**.  You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session F sitting in **Rm 10A (Cambridge) at Middlesex Superior Court.**

Dated: 03/23/2004

Edward J. Sullivan
Clerk of the Courts

BY: Phil Massa
Assistant Clerk

Location: Rm 10A (Cambridge)
Telephone: 617-494-4010 EXT 4281

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130**

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdtracf_2.wpd 2534264 inidoc01 dipacee

| CIVIL ACTION COVER SHEET | 04-1073 | Trial Court of Massachusetts Superior Court Department County: _____ |

**PLAINTIFF(S)** SPECTRA MEDICAL DEVICES, INC.

**DEFENDANT(S)** METALLIC INDUSTRIES INC
MID STATES MEDICAL INSTRUMENT

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Daniel Solomon 11 Beacon St #315 Boston 02108
Blankt Solomon
Board of Bar Overseers number: 472580

**ATTORNEY (if known)**

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.    TYPE OF ACTION (specify)    TRACK    IS THIS A JURY CASE?

A99    Breach of Contract    (F)    ( ) Yes    (X) No

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . $ . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . $ . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . Subtotal $ . . . . . .

FILED IN THE OFFICE OF THE CLERK OF THE FOR THE COURTS MAR 19 2004 CLERK

B. Documented lost wages and compensation to date . . . . . . . $ . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . $ . . . . . .
D. Reasonably anticipated future medical and hospital expenses . $ . . . . . .
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe)
$ . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$ . . . . . .
TOTAL $ . . . . . . . . . . . .

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
Defendants misrepresents themselves to Plaintiff causing Plaintiff to enter into a contract with Defendants, causing Plaintiff loss of business + income

TOTAL $ $200,000

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____    DATE: 3/19/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000