UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
MASSACHUSETTS
Civil Action No. 04-CV-10745-GAO

SPECTRA MEDICAL DEVICES, INC.    )
    Plaintiff    )
        )
VS.    )
        )
MID STATES MEDICAL INSTRUMENTS)
and    )
KK METALLIC INDUSTRIES, INC.    )
    Defendants    )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Plaintiff, Spectra Medical Devices, Inc. ("Spectra") hereby respectfully requests that this Honorable Court deny the Defendants' Motion to Dismiss the Plaintiff's Complaint herein based on the following grounds:

1.      Spectra filed its Complaint in good faith based on the fraudulent conduct of Defendants' as set forth therein, including but not limited to Fraud in the Inducement, as well as the Defendants' specific agreement to jurisdiction in Massachusetts as set forth in many of the writings between the parties. In light of this specific written Agreement between the parties to submit disputes hereto to the jurisdiction of Massachusetts Courts, the Defendants filing in Northern Illinois is at best incomprehensible and at worst indicative of an unethical effort to void this aspect of the Agreements between the parties *de facto* if not *de jure*. A full, true and complete copy of Plaintiff's Motion to Dismiss or Transfer the Defendants' action filed in Chicago is attached hereto as Exhibit "A".

The laws of the Commonwealth of Massachusetts are best interpreted by the Courts of the Commonwealth. The facts substantially revolve around the business Plaintiff conducted within and from the Commonwealth as all writings were signed by the Plaintiff in the Commonwealth, all goods were ordered and received by Plaintiff from Defendants in the Commonwealth and Plaintiff was assured verbally by the Defendants that all legal matters,

including litigation would be conducted in Massachusetts to the exclusion of any other jurisdiction as set forth in the Affidavit of Anthony C. Arrigo, Plaintiff's President attached to Exhibit "A" and previously filed with the US District Court for the Northern District of Illinois.

Mr. Arrigo's Affidavit is clear that during all relevant times Plaintiff sent a representative to Defendant Mid States in Illinois only one time to discuss a quality issue.

Defendants first chose to remove this action from Superior Court, again accepting service and acknowledging and subjecting themselves to Massachusetts jurisdiction. To dismiss this action would unfairly subject Plaintiff to litigation in Illinois to the detriment of the Plaintiff and the Commonwealth of Massachusetts.

WHEREFORE, Plaintiff respectfully requests that Defendants' Motion be denied.

> Plaintiff
> SPECTRA MEDICAL DEVICES, INC.
> By their Attorneys
>
> _____
> Daniel Solomon, BBO#472580
> Garry N. Blank, BBO#045330
> Blank and Solomon
> 11 Beacon Street, Suite 315
> Boston, MA  02108
> 617-367-5800

Dated: October ____, 2004

### CERTIFICATE OF SERVICE

I, Daniel Solomon, attorney for Plaintiff Spectra Medical Devices, Inc. in this matter, hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail on October ____, 2004.

_____
Daniel Solomon

RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR X 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MID STATES MEDICAL INSTRUMENTS, INC.
an Illinois Corporation, and KK METALLIC
INDUSTRIES, INC., a Pakistan Corporation,

Plaintiff

v.

SPECTRA MEDICAL DEVICES, INC.
a Massachusetts Corporation,

Defendant

Case No. 03 C 9235

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS OR TO TRANSFER

### I.   Summary of Argument

Personal jurisdiction over a non-resident Defendant in a diversity action such as this one is proper only if the jurisdiction of the Illinois state court would be proper. For that to be the case, Defendant Spectra Medical Devices, Inc. ("Spectra") had to have had certain minimum contacts with Illinois such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice. That is not the case here so this Court does not have personal jurisdiction over Spectra and dismissal is proper under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

Additionally, in Paragraph 4 of the Distributor Agreement attached to Plaintiffs' Complaint, the parties expressly agreed to Massachusetts as the forum for this dispute and also agreed that Massachusetts law would govern. This Court enforces forum selection clauses, especially those negotiated by and between businesses like Plaintiff Mid States Medical Instruments, Inc. ("Mid States") and KK Metallic Industries, Inc. ("KK") and Defendant Spectra. Consistent with the forum selection clause, Spectra has filed an action in Massachusetts arising out of the Agreement. Alternatively to dismissal, the forum selection clause should be enforced

and this case should be transferred to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404.

## II.    Discussion

### A.    This Court Lacks Personal Jurisdiction over Spectra

Rule 12(b)(2) of the Federal Rules of Civil Procedure holds that an action should be dismissed when there is a lack of jurisdiction over the person. In a diversity action like this one a federal court has personal jurisdiction over a non-resident defendant like Spectra only if a court of the state in which the federal court sits would have personal jurisdiction. Dehmlow v. Austin Fireworks, 963 F. 2d 941, 945 (7th Cir. 1992). An Illinois state court could only exercise jurisdiction over Spectra only if Spectra had certain minimum contacts with Illinois such that the maintenance of the suit would not offend traditional notions of fair play and substantial justice. Weyent v. Vertical Networks, Inc., 2004 U.S. Dist. LEXIS 1443, *4 (N.D. Ill.) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

For an Illinois court's jurisdiction to be appropriate in a suit arising out of or related to Spectra's contacts with Illinois, Spectra must have purposefully established minimum contacts within Illinois, and those contacts must make personal jurisdiction reasonable and fair under the circumstances. Id. at *5 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). In this regard, Spectra must have "purposely availed" itself of the privilege of conducting activities within Illinois, invoking the benefits and protections of its laws such that Spectra would reasonably anticipate being haled into court here. Id. (citing Asahi-Metal Indus. Co. v. Superior Court, 480 U.S. 102, 119 (1987)).

Spectra is a Massachusetts corporation that does business in Massachusetts. (Affidavit of Anthony Arrigo, attached hereto as **Exhibit A**, at ¶4). It is a manufacturer's representative which orders all of the product and supplies it sells for delivery and receipt in Massachusetts.

(Id. at ¶18).  When Spectra resells the product it is considered delivered when it is shipped from Massachusetts.    (Id.).    The Agreement at issue in this case was signed by Spectra in Massachusetts.  (Id. at ¶17).  Spectra does not have a presence in Illinois.  (Id. at ¶5).  It is not possible that Spectra could have reasonably anticipated being hailed into court in Illinois. Maintenance of a suit against Spectra in Illinois would offend traditional notions of fair play and substantial justice and this Court does not have personal jurisdiction over Spectra.

### B.        The Forum Selection Clause Calls for Dismissal or Transfer

28 U.S.C. §1404(a) holds that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404 (2004).  This case is based on an October 1, 1999 Distributor Agreement ("Agreement"), a true and correct copy of which is attached as **Exhibit 1** to the Arrigo Affidavit and is also attached to Plaintiffs' Complaint.  In Paragraph 4 of the Agreement, the parties agreed to the jurisdiction of the commonwealth of Massachusetts and further agreed that the law of Massachusetts would control any litigation under the Agreement. (Exhibit A, Para. 4).

Where a case is in federal court based on diversity jurisdiction, federal law governs whether to give effect to a forum selection clause. Proteva, Inc. v. Warrantech Help Desk, 1999 U.S. Dist. LEXIS 1864 , *4 (N.D. Ill) (citing Stewart v. Organization, Inc., 487 U.S. 22 (1988)). Freely negotiated forum-selection clauses are to be given full effect unless they are fundamentally unfair.  Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593-95 (1991)).  Courts are "hard-pressed" to not enforce a forum-selection clause where the parties are commercial entities who are, or should be, savvy enough to negotiate favorable, or at least, fair terms. Id.  (citing Northwestern Nat'l Ins. Co. v. Donovan, 916 F. 2d 372, 376 (7th Cir. 1990)). The forum selection clause is a principal factor in deciding whether to transfer and should

control unless there is a strong showing that it should be set aside. Id. Forum-selection clauses should be enforced like any other contract unless to do so would be fundamentally unfair. Id.

Forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. Chapman v. Norwegian Cruise Line Ltd., 2001 U.S. Dist. LEXIS 9360, *4 (N.D. Ill.). A forum selection clause is considered reasonable unless (1) the incorporation of the clause was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision. Id.

The forum selection clause in the Agreement is clear and unambiguous. The parties are commercial entities who, presumably, were competent enough to understand what they were doing when the Agreement was negotiated. Upon information and belief, Plaintiff will not be able to establish any of the three exceptions to the enforcement of forum selection clauses. Accordingly, this case should be dismissal or transferred pursuant to the forum selection clause.

Consistent with the forum selection clause, Spectra filed an action against Mid States and KK in the Superior Court for the Commonwealth of Massachusetts, Middlesex County. [See **Exhibit B**]. Mid States has filed a Notice of Removal to the United States District Court for the District of Massachusetts. See **Exhibit C**. By filing a Notice of Removal, Mid States and KK have consented to the jurisdiction of that Court and represented that the jurisdiction of that Court is proper. Vyshnevska v. Park Ridge Oldsmobile, 2003 U.S. Dist. LEXIS 11222, *9-10 (N.D. Ill.). The case is now pending before the Massachusetts federal court. Mid States and KK can pursue any claims they desire as counterclaims in that action. Accordingly, this action should be dismissed or transferred to the District of Massachusetts for consolidation with that case.

-4-

## III.    Conclusion

For the foregoing reasons, Defendant Spectra Medical Devices, Inc. respectfully request

that this Honorable Court dismiss this matter for lack of jurisdiction or, alternatively, transfer this

matter to the United States District Court for the District of Massachusetts in the interest of

justice.

Respectfully Submitted

Spectra Medical Devices, Inc., Defendant

By: _____
     One of Its Attorneys

David M. Rownd, Esq.
Richard F. Bruen, Jr., Esq.
FAGELHABER LLC
55 East Monroe St.
40th Floor
Chicago, Illinois 60603
(312) 346-7500

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MID STATES MEDICAL INSTRUMENTS, INC.
an Illinois Corporation, and KK METALLIC
INDUSTRIES, INC., a Pakistan Corporation, ·

Plaintiff

v.

SPECTRA MEDICAL DEVICES, INC.
a Massachusetts Corporation,

Defendant

Case No. 03 C 9235

## AFFIDAVIT OF ANTHONY C. ARRIGO

Anthony C. Arrigo, upon being duly sworn, deposes and states as follows:

1.      I am an adult individual over the age of 18 years.

2.      The facts stated herein are based upon my personal knowledge, and, if called upon, I could competently testify thereto.

3.      I am the President of Spectra Medical Devices, Inc. ("Spectra Medical").

4.      Spectra Medical is a Massachusetts corporation with its principal place of business in Woburn, Massachusetts.

5.      Spectra Medical has not conducted any business within the State of Illinois.

6.      Spectra Medical has not committed any tortious act within the State of Illinois.

7.      Spectra Medical does not own, use or possess any real estate situated within the State of Illinois.

8.      Spectra Medical has not contracted to insure any person, property or risk located within the State of Illinois at the time of contracting.

9.      Spectra Medical has not made, or performed, any contract or promise substantially connected with the State of Illinois.

10.      Spectra Medical has not acquired ownership, possession or control of any asset or thing of value present within the State of Illinois.

11.    Spectra Medical has neither breached any fiduciary duty within the State of Illinois, nor exercised any powers granted under the authority of the State of Illinois to act as a fiduciary.

12.    Spectra Medical is not a director or officer of any corporation organized under the laws of the State of Illinois, or having its principal place of business within the State of Illinois, and it has never performed any duties as an officer or director of any such corporation.

13.    Spectra Medical does not own any interest in any trust administered within the State of Illinois.

14.    I understand that the litigation captioned <u>Mid States Medical Instruments, Inc. and KK Metallic Industries, Inc. v. Spectra Medical Devices, Inc.</u>, 03-C-9235 (N.D. Ill) (the "Litigation") relates to a Distribution Agreement dated October 1, 1999.

15.    On or about October 1, 1999 I signed the written Distribution Agreement between the parties which is the subject of this litigation. A true and correct copy of the October 1, 1999 Agreement is attached hereto as Exhibit 1.

16.    The October 1, 1999 Agreement provides that parties agree to subject themselves to the jurisdiction of the commonwealth of Massachusetts for the resolution of any disputes. I understood when Spectra Medical executed the October 1, 1999 Agreement that any and all suits between the parties to the Agreement would be brought in the Commonwealth of Massachusetts.

17.    Spectra Medical executed the October 1, 1999 Agreement in Massachusetts.

18.    Spectra Medical ordered all product pursuant to the October 1, 1999 Agreement in Massachusetts and received delivery of all product pursuant to the October 1, 1999 Agreement in Massachussets.

19.    During the entire time of Spectra Medical's relationship pursuant to the October 1, 1999 Agreement, Spectra Medical sent a representative to Mid States Medical Instruments,

Inc.'s ("Mid States") office in Illinois one time to discuss an issue relating to the quality of the products Spectra Medical was receiving from Mid States in Massachusetts.

_____
ANTHONY C. ARRIGO


SUBSCRIBED AND SWORN TO BEFORE ME

This ___ day of April 2004

_____
NOTARY PUBLIC

- 3

# *AGREEMENT*

This agreement is hereby made this 1st day of October 1999, by and between the following parties:*Spectra Medical Devices, Inc.* a Massachusetts Corporation, located at 4F Henshaw street, Woburn, Massachusetts 01801 (hereinafter referred to as " Spectra "), *Mid States Medical Instruments, Inc.,* previously known as , *Ayza, Inc.,* an Illinois Corporation, located at 5050 Newport Drive, Unit 8, Rolling Meadows, Illinois 60008 ( hereinafter referred to as "Mid States ") and *K.K. Metallic Industries,* located at P.O.Box 2033, Sialkot, Pakistan ( hereinafter referred to as " KK " ); and

WHEREAS, the parties are engaged in a business relationship where Spectra purchases hand held steel Instruments manufactured by KK and distributed in the United States by Mid States; and

WHEREAS, Spectra sells these Instruments directly to *C.R. Bard* ( hereinafter referred to as Bard " )and other North American Medical Companies; and

WHEREAS, the parties believe it is in each of their own best interests to work together in this business relationship to provide product from KK through Mid States and Spectra to Bard and other North American Medical Companies in a business like manner.

THEREFORE, for valuable consideration had and received, the value of which is hereby acknowledge by all parties, said parties agree as follows.

1) With reference to Instruments manufactured by KK and distributed by Mid States to Spectra, Spectra agrees to engage and bear the cost of all appropriate promotional activities with reference to said product, customer service, satisfaction, and coordination, in- house U.S. quality inspections as may become necessary, and quality monitoring.

2) KK and Mid States agree to refrain from directly or indirectly soliciting, contacting, doing business with, or engaging in any other form of commercial or business activity, distributing, marketing, purchasing or selling, negotiating or discussing with Bard and other North American Companies (Known to Spectra) or any affiliate or customer of Bard and other North American Medical Companies Known to Spectra, during the pendency of this agreement. This agreement to refrain from any such contact or commercial dealing as set forth herein includes K.K., Mid States, its employees, representatives or agents, or any affiliate staff or business entity. The parties agree to the following terms for carrying out their responsibilities.

Contd......P/2....

ANJUM BUTT
AB.

MUSHTAQ BUTT
MB.

TONY AXIGO

A) In placing orders to be filled and disbursed to Bard and other
North American Medical Companies, known to spectra six months
in advance purchase order, shipment schedule commitment is
required to insure appropriate delivery.

B) Spectra agrees to refrain from directly or indirectly purchasing
IRIS SCISSORS, 4-1/2 STR/CVD, IRIS FORCEPS, 4", STR/CVD/
HALF CVD, HEMOSTATS MOSQUITO FORCEPS, 5", STR/CVD,
BAUMGARTNER NEEDLE HOLDER,5", and JACOBSON
MOSQUITO FORCEPS, DELICATE, 5", STR/CVD/SERRATED/
PLAIN,MAYO HEGAR NEEDLE HOLDERS from any other
vendors including K.K. except Mid States.
This agreement to refrain from any such contact or commercial
dealing as set forth herein includes SPECTRA, its employees,
representatives or agents, or any affiliate staff or business entity.

C) Spectra agrees to purchase and order a minimum of 80,000
Instruments per month from Mid States, but an average of 100,000
per month over a 10 years period beginning from October, 1999
upto August 2008.

D) On any items delivered to Spectra but rejected because of quality
concerns, said items must be returned to Mid States for replace-
ment. No credit shall be allowed but replacement will be allowed
upon the return of the defective or rejected items, unless mutually
agreed to otherwise ( i.e. quick re-cleaning by Spectra for goods
rejects for uncleanness or not clean or burs and or lint.

2)    All items ordered from KK as distributed through Mid States and
delivered to Spectra must be purchased by Spectra. In other words,
all items ordered must be paid for unless rejected pursuant to the
previous paragraph. Any items rejected must be defective in either
its material or in its construction.

3) The parties agree that any violation of paragraphs 2,2A,2B,2C and E
by any of the parties will result in and constitute immediate and
irreparable harm to the other parties and as a result, each party will
be entitled to apply for and receive immediate injunctive relief as they
deem appropriate. Further, any party who has been wrongfully harmed
by the actions of the other in violating the provisions of this agreement
shall be fully liable for appropriate, legal fees and cost.

4  The parties further agree to subject themselves to the jurisdiction of the
commonwealth of Massachusetts and agree further that the laws of said
commonwealth shall control any litigation hereunder. For purpose of,
service, certified mail, return receipt requested, sent to the address of
the parties at the address below indicated shall constitute and suffice as
complete legal service of all documents to be served thereto.

5) Should any portion of this agreement be deemed invalid, That shall no
affect the validity of the remaining provisions of this agreement. "

ANJUM BUTT          MUSHTAQ BUTT        TONY ARRIGO

6) This agreement shall last for Ten years from the date above written but may be extended by written agreement of the parties from time to time thereafter. At any time within these Ten years, the parties but mutual consent can agree to rescind or terminate the agreement as they deem appropriate such early termination would have to be by agreement of all parties. Upon termination, all parties including for Spectra other suppliers of the merchandise above indicated, and for Mid States, to negotiate directly with Bard and any other North American Medical Companies known to Spectra.

7) Time is one of the essence in carrying out the responsibilities of this agreement.

Executed as sealed Instruments this ___1ˢᵗ___ day of October 1999.


_____
ANJUM BUTT, Authorized for
MID STATES MEDICAL INSTRUMENTS, INC.
5050 NEWPORT DRIVE , UNIT 8
ROLLING MEADOWS, IL 60008

_____
M.MUSHTAQ BUTT, Authorized for
K.K. METALLIC INDUSTRIES
P.O.BOX 2033
SIALKOT- PAKISTAN.


WITNESS:-

_____
ANTHONY ARRIGO Jr.
SPECTRA MEDICAL DEVICES,INC.
48 HENSHAW STREET
WOBURN, MA 01801

** TOTAL PAGE 08 **

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS                          SUPERIOR COURT
                                       C.A. NO.

SPECTRA MEDICAL DEVICES, INC.          )
                                       )
            Plaintiff                  )
                                       )
vs.                                    )
                                       )
MID STATES MEDICAL INSTRUMENTS,        )        **COMPLAINT**
INC. an Illinois Corporation, AND KK   )
METALLIC INDUSTRIES, INC., a Pakistani )
Corporation                            )
            Defendants                 )

---

### PARTIES, JURISDICTION AND VENUE

1.     Spectra Medical Devices, Inc. ("Spectra") is a Massachusetts corporation with an usual place of business at 4C Henshaw Street, Woburn, MA 01801.

2.     Defendant Mid-States Medical Instruments, Inc. ("Mid States") is an Illinois Corporaiton having an usual place of business in Illinois, doing business in Massachusetts.

3.     Defendant KK Mettalic Industries, Inc. ("KK") is a Pakistani corporation with its principal place of business in Pakistan, doing business in Massachusetts.

### COUNT I

1.     On or about February, 1997, Plaintiff established a regular course of business dealings with Defendant KK based upon KK's representations that it was the total and complete manufacturer of the medical instruments being sold by it to Spectra.

2.     On or about February, 1998, Spectra discovered that KK was also represented by Defendant Mid-States, f/k/a Aza, Inc. as KK's manufacturer's representative in the United States.

3.     Spectra did not want Mid-States to compete with Spectra for Spectra's then established customer(s), and in an attempt to protect its established regular business dealings from circumvention, Spectra proposed the Agreement attached hereto as Exhibit "A" so that Spectra's customers would not be wooed away by Mid-States and/or KK.

4.    Although Spectra's proposed Agreement was never signed, on or about November 1, 1998 the parties entered the Agreement attached hereto as Exhibit "B", which amongst other things indicates at the end of paragraph 6 that upon termination, all parties including Mid-States a/k/a Aza could immediately negotiate and compete directly with Spectra for Spectra's established customer(s).

5.    At all times relevant hereto up to and including the time that Exhibit "A" was proposed and Exhibit "B" was entered, KK had been providing Spectra with medical instruments at a cost which allowed Spectra to meet and/or beat the price at which its competitors would sell similar medical instruments.

6.    At no time prior or subsequent to the November, 1998 Agreement between the parties did Spectra meet what were otherwise promised and represented to be only "sales goals" despite being referred to in the Agreement as minimum requirements.

7.    Despite not meeting any of the purported "sales goals" on or about October 1, 1999 the parties signed the Agreement attached hereto as Exhibit "C".

8.    Spectra was induced to sign subject Agreement (Exhibit "C") herein by false, material, misleading representations by and on behalf of Mid-States and KK including but not limited to the following:

a.    that KK was and would continue to be the actual total and complete manufacturer of all products distributed pursuant to the written Agreement;

b.    that despite the new Agreement dated October 1, 1999 the established conduct of the parties would not change and the sole effect of the October 1, 1999 Agreement was to extend the potential term thereof without changing the actual course of business conduct established prior thereto;

c.    that KK Metallic, Inc. had complete hands on control of all daily manufacturing operations in their own plant located in Pakistan, including but not limited to the purchase of raw materials and all steps to cutting, forging and fabricating the product(s) as well as complete control over all cost(s) and quality;

d.    that at all times during the working relationship prior to the October 1, 1999 Agreement, the Butts and their respective Companies KK and Mid-States had prided themselves as manufacturing the highest quality medical instruments for the lowest price;

e. that KK would always continue to provide very sharp, competitive pricing with respect to the product they manufactured and would always

2

remain the lowest cost, most competitively priced manufacturer;

    f.    that Spectra could always and should, in the event pricing and/or quality was questioned, purchase product from other manufacturers, insisting a comparison would only result in the conclusion that a lower price meant lesser quality when in fact the opposite was found to be true;

    g.    that Spectra's price would not be undercut by Mid-States and/or KK;

    h.    that KK would put Spectra's name on its catalog of all the medical instruments it manufactured;

    i.    that despite the inclusion of Mid States as KK's distributor, Spectra could hold itself out as having a direct relationship with the manufacturer, KK;

    j.    that despite any other term of the written agreement, Spectra would only pay for items ordered;

    k.    that KK would not manufacture any instruments pursuant to the Agreement not ordered by Spectra;

    l.    that KK's and Mid-States' only recourse in the event of termination would be to allow Mid-States and/or KK to directly solicit Spectra's customers as reflected in paragraph 6 of the November, 1998 Agreement attached hereto as Exhibit "B";

    m.    that KK owned its own forging plant;

    n.    that KK performed its cutting and filing operations;

    o.    that KK performed total and complete fabricating operations.

    p.    that KK would produce total production process flow charts from its forging, cutting and filing operations and provide lot traceability.

    9.    Suddenly during May, 2003 Spectra's largest instrument customer threatened to stop ordering and informed Spectra that its competitors' prices were far below that which Spectra was charging.

    10.    Spectra found itself unable to come close to the lower pricing available to its customers from competitors due to the very high price Spectra was being charged by KK and Mid-States.

11.    Shortly after losing the first of three major accounts, Spectra and Spectra's President were accused of being "frauds" and "liars" because Spectra did not have competitive pricing or a direct relationship with a true manufacturer operating its own forging plant, or performing its own cutting, filing and/or fabricating operations.

12.    As a result of Defendants' conduct as aforesaid Spectra lost the opportunity to sell its other products as well as Defendants to the customer(s) it was losing as a result of lost trust.

13.    When Spectra realized that it was quickly losing its customer(s) because its prices were far above market Spectra made an exerted effort to obtain competitive pricing from KK and Mid-States; however, KK and Mid-States refused, making every excuse that a true "manufacturer" would have for not being able to price competitively in the US market.

14.    The excuses used by KK and Mid-States for not being able to price competitively were fictitious, fabricated and untrue in every respect.

15.    KK was not and is not a total and complete "manufacturer" in that it lacks any manufacturing equipment and does not own its own forging plant.

16.    KK and Mid-States failed and refused to provide manufacturer's pricing to Spectra in accordance with its promises, representations and agreement to treat Spectra as its "manufacturer's representative/direct distributor".

17.    KK and Mid-States failed and refuse to produce its own catalog of items manufactured by them, but put Spectra's name on a general manufacturer's catalog laying out full lines of medical instruments Defendants do not manufacture, without appropriate permission and/or authorization.

18.    Defendants failed and refused to mitigate damages as promised, represented and agreed by attempting to sell the product they manufactured directly to Spectra's customers.

19.    On numerous occasions Defendants encouraged Plaintiff to buy from Defendants' competition as set forth in the May 9, 2003 correspondence, attached hereto as Exhibit "D".

20.    When Plaintiff acted on Defendants' suggestion to compare, they found and obtained superior quality product at approximately one half the price, and Defendants failed and refused to lower their prices or otherwise compete.

21.    All of the above conduct of the Defendants, their agent(s) and employee(s) constitute their deliberate, deceitful and fraudulent misrepresentations upon which they induced Plaintiff to rely, all to the Plaintiff's detriment and damage.

4

## COUNT II

22.    Plaintiff repeats and realleges paragraphs 1 through 21 as though fully set forth herein.

23.    All the conduct of the Defendants, their agent(s) and employee(s) constitute their breach of their contractual obligations to Plaintiff.

## COUNT III

24.    Plaintiff repeats and realleges paragraphs 1 through 23 as though fully set forth herein.

25.    All the conduct of the Defendants, their agent(s), and employee(s) constitutes their lack of good faith and fair dealing in their contractual obligations to Plaintiff.

## COUNT IV

26.    Plaintiff repeats and realleges paragraphs 1 through 25 as though fully set forth herein.

27.    By their actions, Defendants, their agents and employees have willfully and intentionally defrauded and deceived the Plaintiff.

## COUNT V

28.    Plaintiff repeats and realleges paragraphs 1 through 27 as though fully set forth herein.

29.    By their actions, Defendants, their agents and employees as aforesaid have willfully and intentionally defamed Plaintiff.

## COUNT VI

30.    Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

31.    All parties hereto are engaged in a trade or business within the meaning of M.G.L. Ch. 93A, sections 2 and 11.

32.    All the conduct of the Defendants, their agents and employees as aforesaid was committed willfully and intentionally, constituting unfair and deceptive practices against the Plaintiff.

WHEREFORE, Plaintiff demands the following relief:

a.    upon request and when appropriate, issuance of a Temporary Restraining Order prohibiting Defendants from acting pursuant to the Agreement which it obtained fraudulently from Plaintiff;

b.    upon request and when appropriate, Permanent Injunction further declaring that the Agreement is null and void;

c.    upon request and when appropriate, a Short Order of Notice allowing a timely hearing upon Plaintiff's requests per paragraphs "a" and "b" above;

d.    on Plaintiff's claim for fraud, actual and punitive damages as provided by law together with attorney fees, interest and costs;

e.    on Plaintiff's claim pursuant to M.G.L. Ch. 93A, actual damages trebled as provided by law together with attorney fees, costs and interest;

f.    on Plaintiff's claim for breach of contract, actual and punitive damages as provided by law together with attorney fees, costs and interest;

g.    on Plaintiff's claim for defamation, actual and punitive damages as provided by law together with attorney fees, costs and interest; and,

h.    whatever additional relief this Honorable Court deems appropriate.

Respectfully submitted,
Spectra Medical Devices, Inc.
By its Attorneys,

Daniel Solomon, BBO#472580
Garry N. Blank, BBO#045330
Blank and Solomon
11 Beacon Street, Suite 315
Boston, MA  02108
(617) 367-5800

Dated: March __  __, 2004

6

SENT BY: ;                          5088885925;         APR-9-04 10:23AM;        PAGE 9/13
Mar 19 2004 3:02PM    Blank and Solomon

## AGREEMENT



1.      Agreement made this    day of February, 1998, by and between the following Parties. Spectra Medical Devices, Inc. 4F Henshaw Street, Woburn, Massachusetts, ("Spectra"), Ayza, Inc. 2233 Glenview Court, Schaumburg, Illinois, 60194, ("Ayza"), and K K Metallic Industries, P.O Box 2033, Sialkot, Pakistan, ("KK").

2.      The Parties are engaged in a business relationship whereby Spectra purchases hand hold steel instruments manufactured by KK and distributed by Ayza. Spectra sells said instruments directly to C.R Bard ("Bard").

3.      For valuable consideration had and received, the value of which is hereby acknowledged, the Parties agree as follows.

    a.      With reference to instruments manufactured by KK and distributed by Ayza to Spectra, Spectra agrees to engage and bear the cost of all appropriate promotional activities, customer service, satisfaction and coordination, in-house U.S. quality inspection, and quality monitoring

    b.      KK and Ayza agree to refrain from directly or indirectly soliciting, contacting, doing business with, or engaging in any other form of commercial or business activity, distribution, marketing, purchase, sale, negotiation, or discussion with Bard, any affiliate or customer of Bard, or any customer, business or commercial contact made with Bard, its affiliates, associates, or customers, as a result of its business with Spectra described hereto  This Agreement to refrain from any such contact or commercial dealings as set forth in this paragraph includes KK, Ayza, its employees, representatives, agents, affiliates, independent contractors, sales staff and/or any other individual and/or corporate or business entity of KK or Ayza.

4.      The Parties agree that any violation of the terms of the above-paragraph by KK or Ayza will constitute immediate and irreparable harm to Spectra, and as a result thereof Spectra will be entitled to apply for and receive immediate injunctive relief, and,

EXHIBIT A

further, that KK and Ayza shall be fully liable for Spectra's actual damages together with punitive damages as appropriate, legal fees and costs.

    5.    In the event that any legal action is commenced hereto, the Parties agree to subject themselves to the jurisdiction of the Commonwealth of Massachusetts, and agree further that the laws of said Commonwealth shall control in any litigation hereunder. For purposes of service, certified mail, return receipt requested, sent to the addresses of the Parties set forth herein shall suffice as completed legal service of all documents to be served thereto.

    6.    Should any portion of this Agreement be deemed invalid, same shall not effect the validity of the remainder hereof.

    Executed as a sealed instrument this ___ day of February, 1998.

_____        _____
        Authorized Agent        Anthony C. Arrigo, Jr., President
Ayza, Inc.                 Spectra Medical Devices, Inc.


_____
        Authorized Agent
K.K. Metallic Industries, Inc.

2

# *AGREEMENT*

1st    Nov.

This agreement is hereby made this _____ day of _____, 1998, by and between the following parties: **Spectra Medical Devices, Inc.,** a Massachusetts Corporation, located at 4 F Henshaw Street, Woburn, Massachusetts 01801 (hereinafter referred to as "Spectra"), **Ayza, Inc.,** an Illinois Corporation, located at 2233 Glenview Ct., Schaumburg, Illinois 60194 (hereinafter referred to as "Ayza") and **K.K. Metallic Industries,** located at P.O.Box 2633, Sialkot, Pakistan (hereinafter referred to as "KK"); and

WHEREAS, the parties are engaged in a business relationship where Spectra purchases hand held steel instruments manufactured by KK and distributed in the United States by Ayza; and

WHEREAS, Spectra sells these instruments directly to *C.R. Bard* (hereinafter referred to as "Bard"); and *and other North American Companies*

WHEREAS, the parties believe it is in each of their own best interests to work together in this business relationship to provide product from KK through Ayza and Spectra to Bard in a business like manner *and other* *and other North American Companies*

THEREFORE, for valuable consideration had and received, the value of which is hereby acknowledged by all parties, said parties agree as follows

1) With reference to instruments manufactured by KK and distributed by Ayza to Spectra, Spectra agrees to engage and bear the cost of all appropriate promotional activities with reference to said product, customer service, satisfaction and coordination, in-house U.S. quality inspections as may become necessary, and quality monitoring.

2) KK and Ayza agree to refrain from directly or indirectly soliciting, contacting, doing business with, or engaging in any other form of commercial or business activity, distributing, marketing, purchasing or selling, negotiating or discussing with Bard or any affiliate or customer of Bard known to Ayza and KK, during the pendency of this agreement. This agreement to refrain from any such contact or commercial dealing as set forth herein includes KK, Ayza, its employees, representatives or agents, or any affiliate staff or business entity. The parties agree to the following terms for carrying out their responsibilities: *and other North American Companies*

   A) In placing orders to be filled and disbursed to Bard, six months in advance purchase order, shipment schedule commitment is required to insure appropriate delivery.

   B) Spectra agrees to refrain from directly or indirectly purchasing IRIS SCISSORS, 4 ½ STRAIGHT, IRIS FORCEPS, 4", CURVED or HEMOSTAT MOSQUITO FORCEPS, 5", CURVED, from any other vendors including KK except AYZA. This agreement to refrain from any such contact or commercial dealing as set forth herein includes SPECTRA, its employees, representatives or agents, or any affiliate staff or business entity.

   C) Spectra agrees to purchase and order a minimum of 80,000 instruments per month from AYZA, but on average of 100,000 per month over a five year period beginning from August 1998 upto August 2003.

Exhibit B

SENT BY: ;                    5088885925;          APR-5-04  5:44PM;        PAGE 2/2
Apr 05 2004 1:56PM   Blank and Solomon         16173675820              P. 2

## IN THE SUPERIOR COURT FOR THE COMMONWEALTH OF MASSACHUSETTS, MIDDLESEX COUNTY

| | |
|---|---|
| SPECTRA MEDICAL DEVICES, INC. <br> A Massachusetts corporation, <br><br>        Plaintiff, <br><br>        v. <br><br> MID STATES MEDICAL INSTRUMENTS, <br> An Illinois corporation, and KK METALLIC <br> INDUSTRIES, INC., a Pakistani corporation, <br><br>        Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. 04-1073 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF REMOVAL OF ACTION
## PURSUANT TO 28 U.S.C. § 1441(a)

TO:   Mr. Daniel Solomon
      Blank & Solomon
      11 Beacon Street
      Boston, Massachusetts 02108

Please take notice that Defendants Mid States Medical Instruments, Inc. and KK Metallic

Industries, Inc. have, pursuant to 28 U.S.C. § 1441(a) removed this state court action to the

United States District Court for the District of Massachusetts.

Respectfully submitted,

By: _____
One attorney for Defendants

Thomas Patterson (ARDC # 3128587)      Jefferey Poindexter
Scott Berends (ARDC # 6281019)         Bulkley, Richardson & Gelinas, LLP
The Patterson Law Firm                1500 Main Street
33 North LaSalle Street              Suite 2700
Suite 3350                       Springfield, Massachusetts 01115
Chicago, Illinois 60602             Tel. 413-781-2820
Tel. 312-223-1699                Fax. 413-785-5060
Fax. 312-223-8549