UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPECTRA MEDICAL DEVICES, INC. ) <br> A Massachusetts Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MID STATES MEDICAL INSTRUMENTS, ) <br> ) <br> INC. an Illinois Corporation, and KK ) <br> METALLIC INDUSTRIES, INC., a Pakistan ) <br> ) <br> Corporation, ) <br> ) <br> Defendants. | Civil Action No. 04-10745-GAO |

**DEFENDANTS' MID STATES MEDICAL INSTRUMENTS
AND KK METALLIC INDUSTRIES ANSWER TO PLAINTIFF
SPECTRA MEDICAL DEVICES, INC.'S' COMPLAINT**

Defendants, Mid States Medical Instruments ("Mid States") and KK Metallic Industries, Inc. ("KK") (collectively "Defendants") by and through their attorneys, The Patterson Law Firm PC and Bulkley, Richardson & Gelinas, LLP answer Spectra Medical Devices, Inc.'s ("Spectra") counterclaim as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Spectra Medical Devices, Inc. ("Spectra") is a Massachusetts corporation with an usual place of business at 4C Henshaw Street, Wobum, MA 01801.

**ANSWER:** Defendants lack information sufficient to form a belief as to the truth or falsity of paragraph 1 and therefore deny same.

2. Defendant Mid-States Medical Instruments, Inc. ("Mid States") is an Illinois Corporation having an usual place of business in Illinois, and also doing business in Massachusetts.

**ANSWER:** Defendants admit that Mid States is an Illinois corporation with its usual place of business in Illinois. Defendants deny that Mid States does business in Massachusetts. By way of further answer, Defendants state that, prior to Spectra's breach of contract, Mid States did business with Spectra Medical Devices, Inc. a Massachusetts corporation but that all or substantially all business was conducted in Illinois.

3. Defendant KR Mettalic Industries, Inc. ("KR") is a Pakistani corporation with its principal place of business in Pakistan, and also doing business in Massachusetts.

**ANSWER:** Defendants admit that KK's principal place of business is Pakistan. Defendants deny that KK does business in Massachusetts. By way of further answer

1.      On or about February, 1997, Plaintiff established a regular course of business dealings with Defendant KK based upon KK's representations that it was the total and complete manufacturer of the medical instruments being sold by it to Spectra.

**ANSWER:**     Defendants admit that KK and Defendant began doing business together in February 1997 but lack information sufficient to form a belief as to the truth or falsity of the remainder of paragraph 1 and therefore deny same.

2.      On or about February, 1998, Spectra discovered that KK was also represented by Defendant Mid-States, f/k/a Aza, Inc. as KK's manufacturer's representative in the United States.

**ANSWER:**     Defendants admit that KK was represented by Mid States in February 1998 but deny that Spectra discovered this relationship in February 1998.  By way of further answer, the relationship was known by Spectra from the beginning of Spectra's relationship with KK.

3.      Spectra did not want Mid-States to compete with Spectra for Spectra's then established customer(s), and in an attempt to protect its established regular business dealings from circumvention, Spectra proposed the Agreement attached hereto as Exhibit "A" so that Spectra's customers would not be wooed away by Mid-States and/or KK.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth or falsity of Spectra's motives and deny same.  Defendants admit that Spectra proposed Exhibit A to Defendants.

4.      Although Spectra's proposed Agreement was never signed, on or about November 1, 1998 the parties entered the Agreement attached hereto as Exhibit "B", which amongst other things indicates at the end of paragraph 6 that upon termination, all parties including Mid-States a/k/a Aza could immediately negotiate and compete directly with Spectra for Spectra's established customer(s).

**ANSWER:**     Defendants admit that Exhibit B was executed.  The terms of that agreement speak for themselves.

5.      At all times relevant hereto up to and including the time that Exhibit "A" was proposed and Exhibit "B" was entered, KK had been providing Spectra with medical instruments at a cost which allowed Spectra to meet and/or beat the price at which its competitors would sell similar medical instruments.

**ANSWER:**     Defendants admit that their costs have and continue to be competitive in the market and that Spectra agreed to Plaintiff's prices when it executed the contract attached as Exhibit B.  Defendants deny any remaining allegations in paragraph 5.

6.      At no time prior or subsequent to the November, 1998 Agreement between the parties did Spectra meet what were otherwise promised and represented to be only "sales goals" despite being referred to in the Agreement as minimum requirements.

**ANSWER:**   Defendants admit that Spectra did not always meet its minimum requirements from November 1998 to the time Spectra breached its contract with Mid States.  By way of further answer, Spectra repeatedly assured Defendants that it would make up any shortfalls in later months.  Defendants deny that the minimum requirements were ever promised or represented to be sales goals.

7.      Despite not meeting any of the purported "sales goals" on or about October 1, 1999 the parties signed the Agreement attached hereto as Exhibit "C".

**ANSWER:**   Defendants admit that the agreement attached as Exhibit C was signed in or about October 1999.

8.      Spectra was induced to sign subject Agreement (Exhibit "C") herein by false, material, misleading representations by and on behalf of Mid-States and KK including but not limited to the following:

   a.      that KK was and would continue to be the actual total and complete manufacturer of all products distributed pursuant to the written Agreement;

   b.      that despite the new Agreement dated October 1, 1999 the established conduct of the parties would not change and the sole effect of the October 1, 1999 Agreement was to extend the potential term thereof without changing the actual course of business conduct established prior thereto;

   c.      that KK Metallic, Inc. had complete hands on control of all daily manufacturing operations in their own plant located in Pakistan, including but not limited to the purchase of raw materials and all steps to cutting, forging and fabricating the product(s) as well as complete control over all cost(s) and quality;

   d.      that at all times during the working relationship prior to the October 1, 1999 Agreement, the Butts and their respective Companies KK and Mid-States had prided themselves as manufacturing the highest quality medical instruments for the lowest price;

   e.      that KK would always continue to provide very sharp, competitive pricing with respect to the product they manufactured and would always remain the lowest cost, most competitively priced manufacturer;

   f.      that Spectra could always and should, in the event pricing and/or quality was questioned, purchase product from other manufacturers, insisting a comparison would only result in the conclusion that a lower price meant lesser

quality when in fact the opposite was found to be true;

g.   that Spectra's price would not be undercut by Mid-States and/or KK;

h.   that KK would put Spectra's name on its catalog of all the medical instruments it manufactured;

1.   that despite the inclusion of Mid States as KK's distributor, Spectra could hold itself out as having a direct relationship with the manufacturer, KK;

**j.**   that despite any other term of the written agreement, Spectra would only pay for items ordered;

k.   that KK would not manufacture any instruments pursuant to the Agreement not ordered by Spectra;

1.   that KK's and Mid-States' only recourse in the event of termination would be to allow Mid-States and/or KR to directly solicit Spectra's customers as reflected in paragraph 6 of the November, 1998 Agreement attached hereto as Exhibit B

m.   that KK owned its own forging plant;

n.   that KK performed its cutting and filing operations;

o.   that KK performed total and complete fabricating operations.

p.   that KK would produce total production process flow charts from its forging, cutting and filing operations and provide lot traceability.

**ANSWER:**   Defendants deny paragraph 8 including each of its subparts.

9.   Suddenly during May, 2003 Spectra's largest instrument customer threatened to stop ordering and informed Spectra that its competitors' prices were far below that which Spectra was charging.

**ANSWER:**   Defendants lack information sufficient to form a belief as to the truth or falsity of paragraph 9 and therefore deny same.

10.   Spectra found itself unable to come close to the lower pricing available to its customers from competitors due to the very high price Spectra was being charged by KK and Mid-States.

**ANSWER:**   Defendants lack information sufficient to form a belief as to the truth or

falsity of paragraph 10 and therefore deny same.

11.     Shortly after losing the first of three major accounts, Spectra and Spectra's President were accused of being "frauds" and "liars" because Spectra did not have competitive pricing or a direct relationship with a true manufacturer operating its own forging plant, or performing its own cutting, filing and/or fabricating operations.

**ANSWER:**     Defendants lack information sufficient to form a belief as to the truth or falsity of paragraph 11 and therefore deny same.

12.     As a result of Defendants' conduct as aforesaid Spectra lost the opportunity to sell its other products as well as Defendants to the customer(s) it was losing as a result of lost trust.

**ANSWER:**     Defendants deny the allegations in paragraph 12.

13.     When Spectra realized that it was quickly losing its customer(s) because its prices were far above market Spectra made an exerted effort to obtain competitive pricing from KK and Mid-States; however, KK and Mid-States refused, making every excuse that a true "manufacturer" would have for not being able to price competitively in the US market.

**ANSWER:**     Defendants admit that Spectra requested lower prices but deny that any excuses were provided.  Defendants deny the remaining allegations in paragraph 13.

14.     The excuses used by KK and Mid-States for not being able to price competitively were fictitious, fabricated and untrue in every respect.

**ANSWER:**     Defendants deny the allegations in paragraph 15.

15.     KK was not and is not a total and complete "manufacturer" in that it lacks any manufacturing equipment and does not own its own forging plant.

**ANSWER:**     Defendants deny the allegations in paragraph 15.

16.     KK and Mid-States failed and refused to provide manufacturer's pricing to Spectra in accordance with its promises, representations and agreement to treat Spectra as its "manufacturer's representative/direct distributor".

**ANSWER:**     Defendants deny the allegations in paragraph 16.

17.     KK and Mid-States failed and refuse to produce its own catalog of items manufactured by them, but put Spectra's name on a general manufacturer's catalog laying out full lines of medical instruments Defendants do not manufacture, without appropriate permission and/or authorization.

**ANSWER:**     Defendants deny the allegations in paragraph 17.

18.     Defendants failed and refused to mitigate damages as promised, represented and agreed by attempting to sell the product they manufactured directly to Spectra's customers.

**ANSWER:**     Defendants deny the allegations in paragraph 18.

19.     On numerous occasions Defendants encouraged Plaintiff to buy from Defendants' competition as set forth in the May 9, 2003 correspondence, attached hereto as Exhibit "D".

**ANSWER:**     Defendants state that exhibit D speaks for itself.  Defendants deny the remaining allegations in paragraph 19.

20.     When Plaintiff acted on Defendants' suggestion to compare, Defendants' price and quality against other vendors, Plaintiff found and obtained superior quality product at approximately one half the price, and Defendants failed and refused to lower their prices or otherwise meet their obligation to.

**ANSWER:**     Defendants deny the allegations in paragraph 20.

21.     All of the above conduct of the Defendants, their agent(s) and employee(s) constitute their deliberate, deceitful and fraudulent misrepresentations upon which they induced Plaintiff to rely, all to the Defendants detriment and damage.

**ANSWER:**     Defendants deny the allegations in paragraph 21.

## COUNT II

22.     Plaintiff repeats and realleges paragraphs 1 through 2l as though fully set forth herein.

**ANSWER:**     Defendants restate and reallege their answers to paragraphs 1-21 as though fully set forth herein.

23.     All the conduct of the Defendants, their agent(s) and employee(s) constitute their joint and several breach of their contractual obligations to Plaintiff.

**ANSWER:**     Defendants deny the allegations in paragraph 23.

## COUNT III

24.     Plaintiff repeats and realleges paragraphs 1 through 23 as though fully set forth

herein.

**ANSWER:** Defendants restate and reallege their answers to paragraphs 1-23 as though fully set forth herein.

25.     All the conduct of the Defendants, their agent(s), and employee(s) constitutes their joint and several lack of good faith and fair dealing.

**ANSWER:** Defendants deny the allegations in paragraph 25.

## COUNT IV

26.     Plaintiff repeats and realleges paragraphs 1 through 25 as though ftilly set forth herein.

**ANSWER:** Defendants restate and reallege their answers to paragraphs 1-25 as though fully set forth herein

27.     By their actions, Defendants, their agents and employees have willfully and intentionally defrauded and deceived the Plaintiff

**ANSWER:** Defendants deny the allegations in paragraph 27.

## COUNT V

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as though fully set forth herein.

**ANSWER:** Defendants restate and reallege their answers to paragraphs 1-27 as though fully set forth herein

29.     By their actions, Defendants, their agents and employees as aforesaid have willfully and intentionally defamed Plaintiff.

**ANSWER:** Defendants deny the allegations in paragraph 29.

## COUNT VI

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

**ANSWER:** Defendants restate and reallege their answers to paragraphs 1-29 as though fully set forth herein

Wherefore, Defendants Mid States Medical Instruments, Inc. and KK Metallic Industries, Inc. respectfully request this Court dismiss Defendant, Spectra Medical Devices, Inc.'s Complaint with prejudice and for such further relief as this Court deems just and appropriate.

        Respectfully submitted,

        THE DEFENDANTS,
        MID STATES MEDICAL
        INSTRUMENTS, INC. and KK
        METALLIC INDUSTRIES, INC.,
        By Their Attorneys:


        /s/ Jeffrey Poindexter
        _____
        Jeffrey Poindexter (BBO #631922)
        Bulkley, Richardson & Gelinas, LLP
        1500 Main Street
        Suite 2700
        Springfield, MA 01115
        Tel: 413-272-6232
        Fax: 413-272-6805


        Of Counsel:
        Thomas Patterson (3128587)
        Scott Berends (6281019)
        The Patterson Law Firm P.C.
        33 North LaSalle Street
        Suite 3350
        Chicago, Illinois 60602
        Tel. 312-223-1699
        Fax. 312-223-8549

Dated:  March 15, 2005